## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. 18-11101 |
| HENDRIKUS EDWARD TON | SECTION "A" (Judge Kolwe) |
| DEBTOR | CHAPTER 11 |

### RULING AND ORDER ON DISTRIBUTION OF SALE PROCEEDS AND ON PRE-PETITION DOMESTIC SUPPORT OBLIGATION CLAIM

There are currently two matters before the Court in this case for decision. The Court will first consider the Debtor's Supplemental Motion for Order Authorizing the Debtor to Sell Vehicles Pursuant to 11 U.S.C. § 363(B) (ECF #503) (the "Sale Motion"), seeking to sell two cars and four motorcycles. Lynda Ton filed an objection to this Motion (amended objection at ECF #510), raising specific objections to the sale of the motorcycles and a general argument that, as the owner of an undivided one-half interest in the vehicles (as former community property), she is entitled to a distribution of half of the sale proceeds, and that her half of the proceeds should not be used to pay administrative expenses of the estate. During the April 20, 2021 hearing on this matter, the Court overruled the specific objections to the Sale Motion and granted the motion, allowing the Debtor to proceed with the sale of the cars and motorcycles. However, it reserved the issue of how the proceeds should be distributed. The Court entered an Order to that effect on April 26, 2021 (ECF #519).

For the reasons set out below, the Court overrules Lynda Ton's objection to the distribution of the sale proceeds, finding that as unpartitioned community property as of the date of the Debtor's bankruptcy filing, Lynda Ton's interest in the cars and

motorcycles is part of the bankruptcy estate, not her separate property. Thus, she is not entitled to a distribution of half of the proceeds. The Court also finds that the proceeds may be used to pay the administrative expenses of the estate.

Also before the Court is the Debtor's objection to Claim 10-1 by Lynda Ton, which concerns a pre-petition domestic support obligation ("DSO"). The Debtor objected to Claim 10-1 and Lynda Ton's other claims in his First Omnibus Objection on November 4, 2020 (ECF #402), and Lynda Ton responded shortly thereafter (ECF #412). On February 3, 2021, the Court entered an Order Sustaining Claims Objections (ECF #465). With respect to Claim 10-1, the Court sustained the Debtor's objection "solely for purposes of voting and confirmation" of the Debtor's proposed Plan, valuing the claim at $0.00 for voting and confirmation purposes. However, the Court has not yet explicitly addressed the merits. It will do so now, and for the reasons explained below, finds the law of the case doctrine applicable to Lynda Ton's Claim 10-1 relating to the pre-petition DSO, and thus will sustain the Debtor's objection to that claim.

## ANALYSIS

### Distribution of Proceeds from Sale of Cars and Motorcycles

It is undisputed that the cars and motorcycles were the community property of the Debtor and Lynda Ton. However, the community property regime terminated many years before the Debtor filed this proceeding, when the parties divorced. Under Louisiana law, "After termination of the community property regime, the provisions governing co-ownership apply to former community property, unless otherwise

provided by law or by juridical act." La. Civ. Code art. 2369.1; *see also Lockwood v Lockwood*, 256 So.3d 399 (La. Ct. App. 2018) (holding that former community property is governed by the rules of co-ownership). Lynda Ton relies upon these provisions of Louisiana law, and the Fifth Circuit's decision in *In re Provenza*, 82 F. App'x 101 (5th Cir. 2003) to argue that the cars and motorcycles should be treated as merely co-owned property, and the sale proceeds should be divided equally between her and the estate. *See* Lynda Ton's Amended Objection, p. 2 (ECF #510). She also relies on a 2019 ruling in this case in which the Court concluded that Lynda Ton was entitled to half of the proceeds from the sale of certain Florida immovable property.

While the general legal principles Lynda Ton cites are accurate, her interpretation of the law is wrong in the bankruptcy context. Moreover, in relying upon this Court's ruling with regard to the Florida immovable property, she fails to recognize a key factor distinguishing that matter from the sale of the vehicles presently before the Court. To explain the distinction, it is helpful to summarize the applicable legal principles and to clarify the Court's reasoning supporting the 2019 ruling on the Florida property.[1]

As the Fifth Circuit noted in *Provenza*, "For the purposes of bankruptcy, property of the estate is defined in 11 U.S.C. § 541 and state law governs the characterization of property as community or separate." 82 F. App'x at 102. Section 541(a)(2) of the Bankruptcy Code includes as property of the estate:

---

[1] The Court notes that the Debtor's Reply (ECF #515) in support of the Sale Motion accurately sets out the law, and the Court adopts it by reference to the extent it is consistent with this brief explanation.

> **(2)** All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is—
>
>> **(A)** under the sole, equal, or joint management and control of the debtor; or
>>
>> **(B)** liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

*Id.*

In *In re Robertson*, 203 F.3d 855 (5th Cir. 2000), the Fifth Circuit explained that the property's status is determined as of the petition date, and former community property that remains unpartitioned on that date is included in the property of the estate:

> According to the relevant court decisions we have found, "community property" as used to define property of the estate in section 541(a)(2) includes community property and former community property that has not been partitioned as of the petition date but does not include former community property which has been divided and reclassified as separate property by state law before that date. Courts addressing the issue have held that community property which has not been legally divided as of the commencement of the bankruptcy case passes to the debtor's estate.

*Id.* at 861 (footnote and citations omitted). The fact that La. Civ. Code art. 2369.1 classifies former community property as being co-owned by the former spouses after termination of the community but before partition does not change its status under bankruptcy law; only a pre-petition partition can prevent former community property from coming into the bankruptcy estate. *Cf id.* at 860-61.

4

Because the vehicles at issue are all former community property, and the parties had not partitioned the property prior to the petition date, the vehicles are all part of the bankruptcy estate unless they are subject to some exception. Put another way, the mere status as co-owned property under La. Civ. Code art. 2369.1 is not sufficient to make the property separate for purposes of § 541(a)(2), as the *Robertson* decision makes clear. Instead, Lynda Ton must show that the property was actually her separate property prior to the petition date.

Lynda Ton relies primarily on *Provenza*. In that case, the Fifth Circuit was faced with the issue of how to treat immovable property located in Florida and Mississippi that had been jointly purchased by the Debtors during their marriage. The community between the spouses had terminated under Louisiana law prior to the petition date, but the property had not been partitioned by that time. The Fifth Circuit held the outcome was controlled by La. Civ. Code art. 3535, which provides:

> Real rights in immovables situated in this state are governed by the law of this state.
>
> **Real rights in immovables situated in another state are governed by the law that would be applied by the courts of that state.**
>
> Whether a thing is an immovable is determined according to the substantive law of the state in which the thing is situated.

*Id.* (emphasis added).

Because Florida and Mississippi law would treat the property as separate property co-owned by the spouses at the time of purchase, it was separate property for the entire time, including at the petition date. *Provenza*, 82 F. App'x at 104. The

issue in *Provenza* was not how to treat former community property that was unpartitioned at the petition date but rather to determine whether the property was community property at all. Because it was not community property, the non-filing spouse's interest did not come into the estate under § 541(a)(2). However, if it *had* been community property (even if treated as co-owned prior to partition under La. Civ. Code art. 2369.1), the non-filing spouse's interest would have come into the bankruptcy estate.

That is the result this Court reached with respect to the sale of the Florida immovable property in this case in 2019. At the November 13, 2019 hearing at which the Court announced its ruling, the Court focused on the nature of Florida property law and the fact that the Debtor and Lynda Ton were ordinary co-owners under Florida law. *See* Transcript (ECF #331). To the extent there is any confusion from the record, the Court now clarifies that the key fact was not that they were co-owners of unpartitioned former community property (which, under the law cited above, would still be treated as community property and come into the bankruptcy estate under § 541(a)(2)) but that their ownership interests in the Florida immovable property were *separate* property prior to the petition date, so Lynda Ton's separate co-ownership interest could never have come into the estate as former community property. That is the same result the Fifth Circuit reached in *Provenza*.

The result is different for the vehicles in this case, however, because they are movable property located in Louisiana. They are subject to Louisiana law, not the law of any other state. La. Civ. Code art. 2369.1's rule that former spouses are treated as

co-owners prior to partition has other legal effects under Louisiana law, but it does not have the effect of making the property separate, which can be accomplished only through partition. Accordingly, the vehicles came into the bankruptcy estate under § 541(a)(2) along with all other unpartitioned former community property. *See In re Robertson*, 203 F.3d at 860-61.

Because the vehicles are property of the bankruptcy estate, the only remaining issue is whether they may be used to pay the administrative expenses. That decision is governed by Section 726 of the Bankruptcy Code, which provides in relevant part:

> **(c)** Notwithstanding subsections (a) and (b) of this section, if there is property of the kind specified in section 541(a)(2) of this title, or proceeds of such property, in the estate, such property or proceeds shall be segregated from other property of the estate, and such property or proceeds and other property of the estate shall be distributed as follows:
>
>> **(1)** Claims allowed under section 503 [administrative expenses] of this title shall be paid either from property of the kind specified in section 541(a)(2) of this title, or from other property of the estate, as the interest of justice requires.

11 U.S.C. § 726(c)(1).

Under this provision, the Court has discretion to allocate the proceeds from the sale of the vehicles to administrative expenses "as the interest of justice requires." While Lynda Ton argues that the Court should distribute the proceeds from the sale of her half interest to her rather than use them to pay administrative expense, the Court finds that result would be inequitable based on the history and status of this case.

7

As the Court explained at the April 20, 2021 hearing, Lynda Ton's repeated attempts to relitigate already decided issues in this case significantly increased administrative expenses. The Debtor has had to respond many times to various forms of the same arguments, costing additional time and money.

Furthermore, in this case's current posture, the allocation of debts and the eventual effect of discharge weigh in favor of the parties sharing in the administrative expenses. Originally, Judge Magner entered a judgment of partition in the adversary proceeding, Case No. 18-1129, allocating the Hancock Whitney Bank debt, one of the largest claims against the bankruptcy estate, entirely to the Debtor as a separate rather than community debt. Had that outcome stood, then this bankruptcy and the eventual discharge would overwhelmingly benefit the Debtor and not Lynda Ton, as the discharge would mostly concern a debt for which she was not liable; in that case it would stand to reason that she should not have to pay an undue amount of administrative expenses.

However, on appeal to the district court, Judge Milazzo reversed the bankruptcy court's classification of the Hancock Whitney Bank loan relating to the IRS debt and instead classified it as a community debt for which both the Debtor and Lynda Ton are liable. Because both parties are liable, both parties will benefit from the eventual discharge of these obligations through the Plan. The sale proceeds are necessary to help fund the Plan and ensure that both parties actually receive that benefit. Accordingly, in the interest of fairness, the Court finds under § 726(c)(1) that all of the proceeds from the sale of the vehicles should be used to pay administrative

claims in the bankruptcy case. The Court therefore overrules Lynda Ton's objection (ECF #510) to the Sale Motion.

## Pre-Petition DSO Claim 10-1

The Court now turns to Lynda Ton's Claim 10-1, in the amount of $196,072.30, relating to the Debtor's pre-petition domestic support obligation. This is a much simpler issue because it was already effectively decided by Judge Magner in the adversary proceeding to partition the property, Case No. 18-1129, and that finding is now the law of the case. In her August 14, 2019 Memorandum Opinion (ECF #50 in the adversary proceeding), Judge Magner found that, just with his support payments made from February 16, 2014 through December 31, 2015, the Debtor had actually overpaid Lynda Ton by $66,342.00 on the DSO due to Lynda Ton for the period from January 13, 2014 to September 30, 2018, which was well beyond the April 27, 2018 petition date. Because the obligation period she focused on included post-petition DSO obligations as well, but the payments made by the Debtor were all made prior to the petition date, Judge Magner's finding necessarily means that Hank Ton overpaid on the pre-petition DSO by *at least* $66,342.00.

As the Court recently explained in the adversary proceeding in its April 19, 2021 Ruling on Remand from District Court Regarding Use of Life Insurance Policy Proceeds under La. Civ. Code art. 2369.3 (ECF #93 in the adversary proceeding), only the Debtor appealed Judge Magner's judgment. Although Lynda Ton filed a Notice of Cross-Appeal (ECF #82 in the adversary proceeding) on December 20, 2019, she did not seek to overturn the decision at all. Rather:

> Lynda Ton agrees to the final Judgment and with the reasons in the *Memorandum Opinion* (Doc. 50) of the Court accompanying the Judgment and only files this cross-appeal in an excess of caution to preserve her right to argue that there were additional bases and/or reasons upon which the Court could have reached the same ruling and final Judgment and to cross-appeal any adverse findings or conclusions should any part or all of the Judgment be reversed.

Lynda Ton's Notice of Cross-Appeal, p. 1 (ECF #82 in the adversary proceeding). Thus, Lynda Ton fully accepted the bankruptcy court's decision and did not seek to either (a) overturn any of Judge Magner's findings of facts and conclusions of law, or (b) argue that she had failed to consider any argument raised by the parties.

The Debtor did not challenge the finding that he had overpaid on the DSO because, of course, the finding was in his favor, and Lynda Ton expressly supported Judge Magner's Memorandum Opinion and Judgment. Accordingly, there would have been no reason for the district court to revisit the issue, and that finding became final. Lynda Ton did not just passively waive any argument she may have had to challenge the finding of a DSO overpayment; she affirmatively supported all of Judge Magner's findings in her "Notice of Cross-Appeal." Consequently, the Court cannot or, in the alternative, will not revisit the issue now. It is the law of the case, and the Court will not allow a party to continue trying to take new bites at the same apple.

Because of the finding that the Debtor overpaid on his pre-petition DSO by at least $66,342.00, there is no basis for Lynda Ton to claim that the Debtor still owes her any money on that claim. The Court will therefore sustain the Debtor's objection to Lynda Ton's Claim 10-1 and value the claim at $0.00 for all purposes.

## Conclusion and Order

For the reasons set out above,

**IT IS ORDERED** that Lynda Ton's objection (ECF #510) to the distribution of the sale proceeds with respect to the Supplemental Motion for Order Authorizing the Debtor to Sell Vehicles Pursuant to 11 U.S.C. § 363(B) (ECF #503) is OVERRULED. Accordingly, the entirety of the sale proceeds may be used to pay administrative expenses in the bankruptcy case.

**IT IS FURTHER ORDERED** that the Debtor's First Omnibus Objection (ECF #402) is SUSTAINED with respect to Lynda Ton's Claim 10-1, and the claim is valued at $0.00 for all purposes.

Thus, done and signed this 4th day of May, 2021.

_____
Chief Judge John W. Kolwe
United States Bankruptcy Judge